# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DANNY MONROE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:17-cv-00455-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Danny Monroe Smith ("Smith") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Smith timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED.**

## I. Factual and Procedural History

Smith protectively filed an application for DIB on August 16, 2013, alleging disability beginning on November 22, 2012. (Tr. 188-91). Smith later amended his onset date to October 1, 2013. (Tr. 39, 216-17). The Commissioner initially denied Smith's claim, (tr. 83-87), and Smith requested a hearing before an ALJ, (tr. 88-89). After hearings on May 18, 2015 and September

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

24, 2015, the ALJ denied Smith's claim on December 10, 2015. (Tr. 19-29). Smith sought review by the Appeals Council, but it denied his request for review on February 1, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On March 24, 2017, Smith initiated this action. (Doc. 1).

Smith was fifty-three years old on the date of the hearing. (Tr. 40). Smith has a GED and has previously worked as a saddle maker. (Tr. 29, 40, 52).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007. The regulations referenced in this opinion are those that applied to Smith's claim at the time the ALJ rendered his decision, rather than the currently-applicable regulations.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Smith had not engaged in substantial gainful activity since October 1, 2013, his alleged onset date. (Tr. 21). At Step Two, the ALJ found Smith has the following severe impairments: obesity, osteoarthritis of the knees with a history of having a torn meniscus with two prior arthroscopic procedures, mild to moderate degenerative disc disease in the cervical spine, and mild to moderate degenerative joint and disc disease in the lumbar spine with a moderate degree being at L5-S1. (*Id.*). At Step Three, the ALJ found Smith does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

Before proceeding to Step Four, the ALJ determined Smith's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Smith has the RFC

4

> to perform light work as defined in 20 CFR 404.1567(b) except [he] is able to lift and carry up to twenty pounds occasionally and up to ten pounds frequently. He can sit for up to six hours in an eight-hour workday provided that he is allowed to change positions hourly. [He] is capable of standing and walking for four hours in an eight-hour workday. He can occasionally climb stairs and could occasionally perform work activities requiring balance, kneeling, and stooping. He could occasionally reach overhead bilaterally as well as finger and feel bilaterally. [He] cannot crawl or crouch and he should avoid working around unprotected heights. [He] cannot climb ropes, ladders, or scaffolds, but could occasionally use foot controls. [He] should avoid working around moving machinery.

(Tr. 24-25). At Step Four, the ALJ determined Smith could not perform any relevant past work through his DLI. (Tr. 29). At Step Five, the ALJ determined that, considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Smith could perform. (Tr. 29). Therefore, the ALJ determined Smith was not under a disability and denied his claim. (Tr. 30).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Smith raises two objections to the denial of DIB: (1) the ALJ improperly applied the Eleventh Circuit Pain Standard; and (2) the ALJ improperly rejected the opinion of his treating physician while relying on the opinion of a non-treating medical expert. (Doc. 11 at 4-16). Upon review of the parties' briefing and the record, neither ground supports reversal.

## A. The ALJ Properly Applied the Eleventh Circuit Pain Standard

Smith contends the ALJ did not consider the record in its entirety in concluding it did not support the severity of his pain, but rather cherrypicked evidence counter to his longitudinal history of debilitating back and knee pain. (Doc. 11 at 4-12). Smith also argues the ALJ improperly discredited his testimony by calling his overall credibility into question without support. (*Id.*).

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed.Appx. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's

6

method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, after reviewing the record evidence of Smith's treatment history, (tr. 21-24), the ALJ cited the appropriate standard: he concluded that, while Smith's "medically determinable impairments could cause symptoms . . . [Smith's] statements concerning the intensity, persistence, and limiting effect of these symptoms are not entirely credible . . . ." (Tr. 26). See 20 C.F.R. § 416.929; *Mitchell v. Comm'r Soc. Sec. Admin*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (recognizing that, once the pain standard is satisfied, it is the ALJ's job to assess whether a claimant's complaints of pain are consistent with the record evidence). A review of the record shows the ALJ's finding to be supported by substantial evidence.

### 1. The ALJ Properly Considered the Objective Medical Evidence of Smith's Back and Knee Pain

Regarding Smith's back, the ALJ noted Smith's November 4, 2014 MRI, which showed degenerative disc disease, face arthrosis, and disc herniation and protrusion. (Tr. 302, 306). Dr. John Kast, who reviewed the MRI, on December 4, 2014, opined it showed normal degenerative changes in the cervical and lumbar spine, with an "entirely incidental" small disc protrusion

7

centered at L5-S1 that caused no symptoms. (Tr. 309). At the visit, Dr. Kast reported Smith had a supple, non-tender neck. (*Id.*). Dr. Kast stated Smith "does not have a surgical issue which would keep him from working but I suppose the pain issue may be a factor for him. He may benefit from being on Neurotonin but this would be prescribed by someone who will see him on a frequent basis." (*Id.*). Another physician, neurosurgeon Dr. John Johnson,[4] observed Smith and reviewed the imaging on January 22, 2015. (Tr. 400-01). Dr. Johnson found Smith was able to ambulate, albeit slowly. (Tr. 400). He also found, despite Smith's MRI, there was no evidence of a definite myelopathy or radiculopathy, and thus no role for surgical treatment. (Tr. 401). Given that, Dr. Johnson advised Smith "his success would likely be guided by his attempts at weight loss and smoking cessation." (*Id.*). Smith's primary care physician, Dr. Timothy Martin, also reviewed the imaging on November 10, 2014, finding it presented mild abnormalities in the cervical spine and moderate abnormalities in the lumbosacral spine. (Tr. 297).

Smith points to his treatment with Dr. Martin for "constant complaints of pain" in his back. (Doc. 11 at 8). The record supports that Smith sought frequent treatment from Dr. Martin and that Dr. Martin observed limited range of movement in Smith's neck, bilateral back muscle tenderness, and an asymmetrical gait. (Tr. 291-92, 296-97, 313-14, 318-19, 345, 349, 354-55, 359-60, 364-65, 369-70, 375-76).[5] However, as observed by the ALJ, Dr. Martin recommended

---

[4] As the Commissioner notes, the ALJ incorrectly identifies Dr. Johnson as Dr. Johnny Stephen Howell. (Doc. 12 at 8). It is clear from the ALJ's decision which doctor he is referencing.

[5] Smith references a number of Dr. Martin's records dated May 6, 2015 to February 10, 2016, which are contained in Exhibit 17F. (Tr. 480-544). This evidence was submitted to the Appeals Council, which then declined review. (Tr. 1, 4). "When the Appeals Council has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Wilson v. Comm'r of Soc. Sec.*, 647 F. App'x 951, 952 (11th Cir. 2016) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir.1998)) (internal quotation marks and alterations omitted). Therefore, the undersigned has not considered these records on review.

conservative treatment for Smith's back pain. For example, on October 21, 2014, Dr. Martin recommended Smith treat his pain with ice for fifteen minutes, then heat for fifteen minutes, followed by topical analgesia. (Tr. 293). More often, Dr. Martin simply recommended the current therapy be continued (Tr. 315, 320, 346, 351, 356, 371), occasionally noting Smith had "good quality of life with pain medication" with no side effects, (tr. 346, 371, 377). Smith himself frequently reported prescription medication relieved his symptoms. (Tr. 343, 363, 368).

As for Smith's knee pain, Smith points to some evidence that predates two surgical procedures which the ALJ found resulted in improvement, (tr. 27-28). For example, Smith notes he presented to Shoals Orthopedics on November 11, 2014, with bilateral knee pain which he rated at eight out of ten, and that examinations in December 2014, January 2015, and March 2015 showed joint tenderness. (Doc. 11 at 9) (citing tr. 329, 330, 345, 365 & 367). However, on March 23, 2015, Smith underwent right knee arthroscopy with partial meniscectomy, the first of the surgical procedures identified by the ALJ. (Tr. 325). Smith had two follow-up visits with Shoals Orthopedics. On March 30, 2015, Smith saw Dr. Paul A. Davis, who noted Smith had an appropriate range of motion and was full weight bearing. (Tr. 338-39). Smith stated he was "doing well other than some soreness behind the knee." (Tr. 338). Dr. Davis removed Smith's stitches and set a second follow-up visit for April 27, 2015. (Tr. 339). On April 9, 2015, Smith saw Dr. Martin, complaining of throbbing joint pain in his right knee. (Tr. 343). Examination revealed joint tenderness in the lateral aspect of both knees. (Tr. 345). However, Dr. Martin noted Smith had attempted to treat the pain with prescription medications (Norco), which had been successful. (*Id.*). On Smith's April 27, 2015 follow-up visit with Dr. Davis, Smith reported his right knee was getting better, but continued to complain of dull/aching pain, rated at 5-6/10, and popping in his right knee when standing, rated at 10/10. (Tr. 412). By contrast, his objective results were

unremarkable: normal gait, ambulating with no assistive devices, and no patellar tracking and normal patellar mobility in both knees. (Tr. 413). Although a physical exam revealed crepitus in Smith's right knee, his knee flexion and knee extension were both within normal limits and 5/5 in terms of strength, with no laxity or subluxation in his patellar joint mobility. (*Id.*). Based on this, Dr. Davis concluded Smith was "back to baseline" and progressed him to a home exercise program. (Tr. 413).

Smith's second surgery was prompted by a June 23, 2015 visit to Dr. Davis at which Smith complained of severe (9/10) left knee pain after hyperextending his knee on Memorial Day weekend. (Tr. 416). Although Smith continued to have a normal gait, no limp, and ambulated without the aid of an assistive device, Dr. Davis found Smith's left knee had a limited range of flexion and pain at the extreme limits of the range of motion. (Tr. 417). On July 15, 2015, Smith underwent a left knee arthroscopy, partial medial meniscectomy, and excision of plica. (Tr. 408). At a July 21, 2015 follow-up visit following the procedure, Smith reported his left knee had been accidentally hit, causing an increased pain rating of 8-9/10. (Tr. 424). However, Smith noted pain medication and ice helped alleviate his pain. (*Id.*). Dr. Davis observed no swelling, tenderness, or warmth, with an appropriate range of motion, and he removed Smith's stitches. (Tr. 425). On August 11, 2015, Smith reported instability and constant pain (rated 7-8/10) in his left knee, and that physical therapy was "killing [him] especially with squats." (Tr. 435). Smith also reported trouble with sit to stand transfers with his left knee. (*Id.*). Again, though, Dr. Davis's findings were unremarkable: no swelling, tenderness, or warmth, with an appropriate range of motion. (Tr. 436). Dr. Davis elected to continue physical therapy and see Smith back in three weeks. (*Id.*). The record does not reflect what happened at that visit, but Smith's physical therapy records from the next several weeks indicate only that his knee had an occasional "twinge," with some weakness

10

descending stairs but no knee buckling. (Tr. 465-69). On September 4, 2015, Smith's physical therapy provider noted he could ambulate stairs reciprocally without knee buckling, had met all goals for physical therapy, and discharged him to a home exercise program. (Tr. 465).

Viewing the medical record as a whole, the ALJ's finding it is inconsistent with the level of disabling pain Smith testified to is supported by substantial evidence. Routine, conservative treatment appears to have relieved Smith's back pain, as described above. The ALJ was entitled to find this conservative treatment undermined Smith's complaints of disabling pain. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). The ALJ was also permitted to take into account that medication controlled Smith's symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). And the ALJ's conclusion Smith's knee pain was relieved by surgery is supported by substantial evidence as well; subsequent visits after both surgeries showed unremarkable physical results, including an appropriate range of motion, and Smith's physical therapy indicated nothing debilitating. Whether other evidence in the record might support a different conclusion is not for this court to assess. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

**2. The ALJ Properly Considered Smith's State Unemployment Application**

Smith argues the ALJ inappropriately found Smith's testimony was undermined by the fact he sought unemployment benefits during a period of time when he also alleged disability. (Doc. 11 at 6-7). The ALJ addressed this at the beginning of the first hearing, when the ALJ noted Smith had received unemployment benefits during the third quarter of 2013, after the original alleged onset date of November 22, 2012. (Tr. 38-39). At the hearing, Smith amended his onset date to October 1, 2013. (Tr. 39).

Alabama law specifically precludes eligibility for unemployment benefits where the claimant is unemployed due to sickness or disability; in fact, to be eligible the claimant must be "physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work," ALA. CODE §§ 25-4-77 & 25-4-78, and must certify this under penalty of law, ALA ADMIN. CODE § 480-4-3-.15. Notwithstanding Smith's amended onset date, the ALJ was correct that Smith gave, under penalty of law, simultaneous, directly contradictory statements as to his physical capability for work. The record does not reflect Smith's condition changed between his original onset date and his amended onset date. Additionally, as the Commissioner notes, Smith submitted an affidavit on August 25, 2015 — after he amended his onset date — alleging disability as of the original onset date. (Tr. 218). The ALJ did not commit reversible error in finding this factor cuts against Smith's credibility.

### 3. The ALJ Erred in Finding Smith's Ability to Sit Through the First Hearing Undermined His Credibility, but the Error Is Harmless

Finally, Smith contends the ALJ inappropriately discredited his testimony by concluding Smith's ability to sit through the first hearing undermined his testimony about how long he could sit. (Doc. 11 at 6). The ALJ stated Smith had testified he could only sit for five to ten minutes without moving, and that Smith's ability to sit through the 32-minute hearing undermined this testimony. (Tr. 26). In contrast, Smith's actual testimony was that he could sit for ten to fifteen minutes without moving, and for thirty to forty minutes if he took his medication (which he testified he had done the morning of the hearing). (Tr. 47). Smith also points out that he did have to stand up due to a back cramp at the second hearing, (tr. 67), which lasted only twenty-two minutes. (Doc. 11 at 6).

12

Smith's testimony was not inconsistent with any of the behavior he exhibited at the hearings, and the ALJ erred by using it to find Smith less credible. However, even though it was erroneous for the ALJ to conclude Smith's presentation at the hearing undermined his testimony, the error was harmless. As discussed above, sufficient evidence exists to support an adverse credibility determination independently of the ALJ's erroneous assessment of Smith's behavior and testimony at the hearing. *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 860 (11th Cir. 2012); *Vesy v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009) (ALJ's erroneous statement that claimant had not taken a bathroom break during the hearing was harmless error even when the ALJ used that misstatement to discredit the claimant's testimony she required frequent bathroom breaks; claimant's testimony was otherwise inconsistent with the record, and that inconsistency provided substantial evidence to support the ALJ's credibility determination notwithstanding the factual error).

**B. The ALJ Properly Considered Dr. Martin's Opinion**

Smith's final argument is that the ALJ failed to articulate the good cause necessary to assign less weight to Dr. Martin's opinion, and instead improperly relied on the opinion of medical expert Dr. Ollie Raulston.

Dr. Martin prepared a physical capacity evaluation in which he indicated Smith could sit for one hour, stand for one hour, and walk for two hours at a time during an eight-hour workday; sit for one hour, stand for one hour, and walk for two hours total during an eight-hour workday; occasionally lift and/or carry up to ten pounds, but never more; never use his arms and hands for pushing or pulling; occasionally use his feet for pushing and pulling; occasionally bend and climb, but never squat, crawl, or reach; never be exposed to unprotected heights or moving machinery; be exposed only mildly to marked changes in temperature and humidity and dust, fumes, and gases;

13

drive automotive equipment only to a mild degree; and use his hands occasionally to grasp but never for fine manipulation or fingering/handling. (Tr. 430-31). Dr. Martin's medical basis for these restrictions was "Degenerative neck with limited movement side to side, up & down. Arthritis hands with sausagelike fingers limiting ability to grasp. Knees arthritis limit squat, crawl or a lot of walking. Has knee ligament tears, and frequent muscle spasms. Stiffness in multiple joints." (Tr. 430).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The ALJ rejected Dr. Martin's opinion as inconsistent with other record evidence, assigning it little weight. (Tr. 28). Specifically, he noted Dr. Martin's own characterization of

14

Smith's lumbar spine and right knee imagine as reflecting "moderate" abnormalities and his cervical spine, left knee, and left foot as only mildly abnormal, (tr. 297). Additionally, the ALJ noted Dr. Martin's assessment of Smith's impairments is inconsistent with the level of severity implied by Dr. Johnson's opinion surgery was not necessary and that, instead, "his success would likely be guided by his attempts at weight loss and smoking cessation," (tr. 401). As for the grasping restrictions Dr. Martin imposed, the ALJ determined arthritis in Smith's hand was not a medically determinable impairment, as no record evidence supported its existence. (Tr. 28). Although Smith argues the ALJ's assessment ignores the totality of the evidence, as described above, the totality of the evidence (including Dr. Martin's own treatment notes) supports relatively minor objective medical findings inconsistent with the level of restriction Dr. Martin imposed. In addition, as the ALJ observed, Smith's symptoms were managed with medication and other conservative treatment. Substantial evidence supports the ALJ's decision good cause exists to assign little weight to Dr. Martin's opinion due to its inconsistencies with the record as a whole.

Nor did the ALJ err by crediting Dr. Raulston's opinion over Dr. Martin's. After the first hearing, the ALJ decided to order an orthopedic medical expert. (Tr. 53). The expert, Dr. Raulston, reviewed the medical record, and testified by telephone at the second hearing. (Tr. 57). Dr. Raulston recounted the record evidence and provided limitations consistent with the RFC the ALJ ultimately imposed. (Tr. 57-61). Dr. Raulston testified he relied only on objective findings, rather than the pain Smith claimed. (Tr. 61). The ALJ determined Dr. Raulston's opinion was consistent with the record, including Dr. Martin's finding of moderate lumbar spine and right knee abnormalities and mild cervical spine, left knee, and left foot abnormalities and Dr. Johnson's findings Smith's back pain did not require surgical intervention. (Tr. 28). Therefore, the ALJ assigned Dr. Raulston's opinion significant weight. (Tr. 28-29).

15

Although medical experts are not treating physicians, their opinions may be entitled to great weight when supported by the evidence. *See* 20 C.F.R. § 404.1527(e)(2); SSR 96-6p. Standing alone, however, a nonexamining, nontreating physician's opinion is not substantial evidence when it contradicts a treating physician's opinion. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). In this case, Dr. Raulston's opinion does not stand alone; it is consistent with the evidence identified by the ALJ. Smith accuses the ALJ of cherry-picking the record to find that evidence, but, as discussed above, the record as a whole supports mild to moderate abnormalities, resulting in symptoms that are well controlled with medication and other conservative treatment, and contradicts Dr. Martin's opinion as to Smith's limitations. When substantial evidence supports a conclusion contrary to a treating physician's opinion, an ALJ does not err reaching that conclusion simply because a non-treating physician also reached it. *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012).

Smith finally contends Dr. Ralston was required to take into account his pain in determining his limitations, citing in support Dr. Kast's statement that "the pain issue may be a factor for [Smith]," (tr. 309). (Doc. 11 at 14). In full, this statement is that "[Smith] does not have a surgical issue which would keep him from working, but <u>I suppose</u> the pain issue <u>may be a factor</u> for him." (Tr. 309) (emphasis added). This equivocal statement imposes only a speculative limitation, and Dr. Kast defers to "someone who will see him on a frequent basis" to make the determination of how to treat Smith short of surgery, which was not indicated. (*Id.*). More importantly, however, Smith ignores that it is the <u>ALJ's</u> responsibility to assess whether Smith's subjective complaints of disabling pain are supported by the objective evidence, not Dr. Ralston's. *See Holt*, 921 F.2d at 1223. The ALJ did so. He did not simply defer to Dr. Ralston's assessment. Consequently, while Smith may contend Dr. Ralston's opinion did not reflect the whole picture,

he cannot contend the ALJ relied on Dr. Ralston's opinion to conclude he was not limited by his pain to the degree he alleged. Substantial evidence supports the ALJ's decision to credit Dr. Ralston's opinion over Dr. Martin's.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Smith's claim for a period of disability and disability insurance benefits is **AFFIRMED**.

DONE this 21st day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE